UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:08-CV-173-H

| | |
|---|---|
| GARY JOSEPH STODDARD and wife, PATRICIA ANN STODDARD, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) **ORDER** ) |
| PLIVA USA, INC., | ) ) |
| Defendant. | ) ) |

This matter is currently before the court on Defendant's motions to exclude the testimony of Plaintiffs' experts, Robert C. Nelson, Ph.D., and David Ross, M.D. [DE #155 & 157], which were referred to the undersigned for ruling pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure. Plaintiffs have responded, Defendant has replied, and the motions are ripe for ruling.

## BACKGROUND

Gary Stoddard ("Stoddard"), together with his wife Patricia Ann Stoddard (collectively "Plaintiffs"), filed the complaint giving rise to this action in the Superior Court of Pitt County, North Carolina, alleging that Stoddard developed tardive dyskinesia, a neurological movement disorder, from his use of the prescription drug metoclopramide, the generic equivalent of Reglan®. Plaintiffs sued Defendant PLIVA USA, Inc. ("PLIVA"), the alleged manufacturer of the metoclopramide taken by Stoddard, as well as the manufacturers of Reglan® ("brand-name manufacturers"). The action was removed to this court based on diversity jurisdiction, and on June 24, 2009, the court entered an order dismissing Plaintiffs' strict-liability claims as to all defendants and granting the brand-name manufacturers' motion for summary judgment as to the

claims against them. PLIVA subsequently filed a motion for judgment on the pleadings, arguing that all of Plaintiffs' claims are precluded by conflict preemption, as well as a motion for summary judgment; and Plaintiff filed a motion for partial summary judgment with respect to their claim that PLIVA failed to provide adequate warnings. Following the Supreme Court's decision in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), the court entered an order granting in part and denying in part Defendant's motion for judgment on the pleadings and motion for summary judgment and denying Plaintiffs' motion for partial summary judgment. As a consequence of the court's ruling, the following claims were dismissed or summarily denied: (1) Plaintiffs' claims based on PLIVA's alleged failure to comply with state law requirements to provide adequate warnings of the risks of metoclopramide, the claims having been dismissed on the ground they are preempted by federal law; (2) Plaintiffs' claim for breach of undertaking a special duty, which was dismissed as not cognizable under North Carolina law; and (3) Plaintiffs' emotional distress claims, which were summarily disposed of due to a lack of evidence of "severe emotional distress."

Presently before the court are Defendant's motions to exclude the testimony of Plaintiffs' experts, Robert C. Nelson, Ph.D., and David Ross, M.D.

## DISCUSSION

**I.     Legal Standard**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2

> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[F]ederal judges are to act as gatekeepers to determine whether an expert's opinion is reliable and whether his testimony will be helpful to the jury." *Sheffield v. West Am. Ins. Co.*, No. 7:08-CV-191-H, 2010 WL 2990012, at *3 (E.D.N.C. July 27, 2010) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)). In making this determination, the court should consider whether the reasoning or methodology underlying the expert's opinion is reliable – whether it is supported by adequate validation to render it trustworthy. *Daubert*, 509 U.S. at 590. Additionally, the court must consider the relevancy of an expert's opinion. *Id.* at 591-92. Expert testimony is admissible only if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985), *cited with approval in Daubert*, 509 U.S. at 2795-96.

**II.     Plaintiffs' Expert Dr. Robert C. Nelson**

Dr. Robert C. Nelson ("Dr. Nelson") is a clinical pharmacist with extensive experience in the areas of pharmacology and epidemiology and holds a Ph.D. in epidemiology from the University of Minnesota. He was employed by the Food and Drug Administration ("FDA") for over twenty years in positions of increasing responsibility and scope in the areas of new drug review, epidemiology, and post-marketing surveillance. During his tenure with the FDA, Dr. Nelson served as Associate Director of Epidemiology, Director of the Office of Professional Development and Staff College, Assistant Director of the Office of Drug Evaluation II, and Assistant Director of the Office of Biologics Research and Review. He also worked in the FDA's Office of New Drug Evaluation and Division of Neuropharmacological Drug Products.

3

As Associate Director of Epidemiology, Dr. Nelson led the reengineering of the FDA's Post Marketing Drug Safety Surveillance Program, was responsible for strategic planning and policy formulation for epidemiology within the agency's Center for Drug Evaluation and Research, and managed the development and implementation of the agency's Adverse Event Reporting System. He currently consults on issues of drug safety, post-marketing surveillance, pharmacoepidemiology, therapeutic risk management, pharmacovigilance practices, and drug regulation.

PLIVA seeks to exclude Dr. Nelson's testimony in its entirety. PLIVA argues that Dr. Nelson's opinions should be excluded because they are outside the area of his expertise and they are nothing more than inadmissible "legal" opinions. Alternatively, PLIVA argues that the court should exclude (1) Dr. Nelson's proffered regulatory opinions because they concern alleged inadequacies of the product labeling and, therefore, relate to matters preempted by federal law as explained in *Mensing*; and (2) any general causation and epidemiology opinions relating to the alleged risk of developing tardive dyskinesia by persons taking metoclopramide long-term because the opinions are not based on proper epidemiological principles and methods and, to the extent they criticize the product labeling, are preempted by federal law.

Dr. Nelson is highly educated, a veteran of the FDA, and a seasoned trial expert on the type of issues presented in the instant action. Plaintiffs seek to offer his testimony on a variety of highly technical topics about which the average layperson has virtually no knowledge. The court concludes that Dr. Nelson is qualified to testify as a general matter because his testimony is both relevant and reliable. Exclusion of his testimony, in its entirety, would therefore be improper. In so finding, the court specifically rejects PLIVA's argument that Dr. Nelson does not possess the

4

requisite experience to offer testimony regarding the FDA's regulation of generic drugs generally or the post-marketing surveillance of generic drugs.

That said, the court finds that Dr. Nelson's report contains a number of opinions that are inadmissible because they concern claims that have been dismissed as preempted by federal law. The only claims remaining before the court in this case are Plaintiffs' state-law claims of negligence, unfair or deceptive trade practices and loss of consortium.[1] (Apr. 5, 2013 Order [DE #149] at 5; Nov. 21, 2013 Order [DE #181] at 3.) At the heart of these claims are Plaintiffs' allegations (1) that PLIVA had a duty to conduct post-market surveillance, to review all adverse drug event information, and to report to the FDA any information bearing on the risk or prevalence of side effects caused by metoclopramide (Compl. ¶¶ 73, 74), (2) that PLIVA breached its duty of reasonable care by failing to conduct such post-market surveillance/review, and (3) that PLIVA failed to report to the FDA drug risks of which it knew or should have known. To the extent Dr. Nelson's proffered testimony relates to matters outside the scope of the claims remaining before the court, the testimony is not "sufficiently tied to the facts of the case . . . [to] aid the jury in resolving a factual dispute," *Downing*, 753 F.2d at 1242, and must be excluded. Additionally, Dr. Nelson may not be allowed to offer an opinion that is in direct conflict with the Supreme Court's decision in *Mensing*.

Dr. Nelson may provide testimony concerning such issues as the general regulatory scheme for the approval and review of drugs, including post-marketing surveillance; the development and FDA-approval of Reglan® and its generic equivalent, metoclopramide; the side effects associated with metoclopramide; the accuracy of the Reglan® drug label and the

---

[1] All other claims raised in Plaintiffs' complaint were dismissed in light of *Mensing*. (Jan. 31, 2013 Order [DE #131]; Apr. 5, 2013 Order [DE #149]; Nov. 21, 2013 Order [DE #181].)

5

Case 4:08-cv-00173-H   Document 182   Filed 11/27/13   Page 5 of 11

historical changes made thereto; and the etiology and epidemiology of tardive dyskinesia. He may also testify concerning the post-marketing surveillance/reporting by PLIVA. He may not, however, provide any opinion with regard to PLIVA's alleged failure to perform a comprehensive risk analysis of tardive dyskinesia prior to the approval of metoclopramide, nor may he testify in any manner that would suggest PLIVA had a duty to provide consumers (or their physicians) with warnings other than those approved for the brand-name label.

Also inadmissible are any "opinions" that constitute pure legal conclusions concerning the applicability of the laws or regulations involved in this case. As a consequence, Dr. Nelson will not be allowed to testify to such statements as "There is no provision of the Hatch-Waxman amendment to the FDCA that overrides the basic and fundamental safety provisions (1938 and 1962) of that Act," "Past or present lax practices by FDA cannot be interpreted as policy or law," or "Operational policy by FDA organizational units cannot alter or function contrary to the law, be they statutory or administrative." These are legal matters best left for counsel's argument to the jury.

Furthermore, Dr. Nelson may not testify that the "Changes Being Effected" procedure allows a generic manufacturer, such as PLIVA, to unilaterally change its drug label, an argument the Supreme Court rejected in *Mensing*. *See Mensing*, 131 S. Ct. at 2575 (accepting the FDA's interpretation that changes unilaterally made by a generic manufacturer would violate federal requirements that the generic label be the same as the brand-name label). He may testify, though, concerning the availability of procedures for a generic drug manufacturer to request FDA assistance in strengthening the corresponding brand-name label and the FDA's practices

6

Case 4:08-cv-00173-H   Document 182   Filed 11/27/13   Page 6 of 11

with regard thereto. *See Mensing*, 131 S. Ct. at 2578 (recognizing that the *Mensing* plaintiffs' claims were not based on a failure to ask the FDA for assistance in changing the labels).[2]

The court rejects PLIVA's contention that Dr. Nelson's general causation and epidemiology opinions are inadmissible. Contrary to PLIVA's argument, Dr. Nelson's opinion that the risk of developing tardive dyskinesia is much greater than the 1-in-500 indicated in the FDA-approved drug label is not preempted by federal law. It is true that Dr. Nelson may not testify that PLIVA could have or should have changed its label to reflect the "true" risk of metoclopramide. Nevertheless, principles of federal preemption do not preclude Plaintiffs from offering evidence of metoclopramide's "true" risk to support their claim that PLIVA breached its standard of care or to establish causation in this case. Moreover, the fact that no study exists regarding the incidence of tardive dyskinesia in diabetics does not render incompetent Dr. Nelson's opinion concerning the incidence and prevalence of tardive dyskinesia in the general population. The court finds no basis for PLIVA's claim that general causation requires a showing that metoclopramide is capable of causing tardive dyskinesia in the particular sub-population of which Stoddard is a member. Additionally, Dr. Nelson's epidemiological opinions appear to rest on the same principles and methodologies utilized by the FDA. Any challenge to the soundness of Dr. Nelson's opinion that the incidence of metoclopramide-induced tardive

---

[2]In its reply brief, Defendant states that both the FDA and the Supreme Court in *Mensing* rejected the argument that a generic drug manufacturer could or should approach the "FDA to seek a change in the Reglan/metoclopramide labeling to add warnings." (Reply Mem. Supp. Mot. Exclude Dr. Nelson [DE #172] at 6, n.2.) In fact, in *Mensing*, the FDA argued that generic manufacturers not only *could* propose stronger warning labels but were *required* to do so if they believed such warnings were needed. *Mensing*, 131 S. Ct. at 2576. The *Mensing* Court having deferred to the FDA's interpretations of its "Changes Being Effected" procedure, generic labeling regulations and "Dear Doctor" letters, the court has no reason to believe that the Supreme Court would not also defer to the FDA's interpretation of a generic manufacturer's duty to request a strengthened label.

7

dyskinesia is greater than indicated on the drug label go to the weight, not the admissibility of the testimony.

**II.     Plaintiffs' Expert David Ross, M.D.**

PLIVA also seeks to exclude the testimony of Plaintiffs' expert, David Ross, M.D., on several grounds. First, PLIVA argues that he is not qualified to diagnose movement disorders, such as tardive dyskinesia because he is a neuropsychiatrist, not a neurologist. Second, PLIVA contends that his opinions are unreliable because there is no competent evidence of general causation, he did not conduct a proper differential diagnosis, and the facts do not support his opinion.

Dr. Ross is a board-certified psychiatrist who specializes in neuropsychiatry. He is currently the Director of the Virginia Institute of Neuropsychiatry in Midlothian, Virginia, and a Clinical Assistant Professor of Psychiatry at the Medical College of Virginia, Virginia Commonwealth University. He has substantial experience with movement disorders, including tardive dyskinesia, tardive akathisia, and traumatic brain injury. He has been working with tardive dyskinesia patients for approximately twenty years and over ten years with patients whose tardive dyskinesia was caused by Reglan® or metoclopramide. Over the course of his career, he has seen hundreds, if not thousands, of tardive dyskinesia patients. He is well published, with a number of peer-reviewed articles on the topic of tardive dyskinesia. His testimony is being offered by Plaintiffs on the following topics: (1) the development and onset of tardive dyskinesia caused by Reglan®/metoclopramide, generally, and, specifically, with regard to Stoddard; (2) the symptoms and severity of tardive dyskinesia exhibited by Stoddard; and (3) the diagnosis, treatment and prognosis of Stoddard. Dr. Ross' background and extensive experience with movement disorders make him more than qualified to provide expert testimony

on the topic of tardive dyskinesia, its diagnosis, treatment and psychological effects. The court, therefore, rejects PLIVA's argument that Dr. Ross is not qualified to testify as an expert in this case.

Bootstrapping its objection to Dr. Nelson's epidemiology testimony, PLIVA next argues that Dr. Ross' testimony should be excluded because there is no evidence of general causation – that metoclopramide is capable of causing tardive-dyskinesia in the sub-population of which Stoddard is a member (diabetics). As set forth above, however, the court finds no basis to support PLIVA's assertion that general causation evidence must relate to the plaintiff's sub-population, as opposed to the general population. "General causation is established by demonstrating, often through a review of scientific and medical literature, that exposure to a substance can cause a particular disease (e.g., that smoking cigarettes can cause lung cancer)." Mary Sue Henifen *et al.*, *Reference Guide on Medical Testimony, in* Reference Manual on Scientific Evidence 439, 444 (Fed. Jud. Ctr., 2d ed. 2000), *quoted in Fisher v. Pelstring*, 817 F. Supp. 2d 791, 815 (D.S.C. 2012). In this case Plaintiffs have presented ample evidence, through expert testimony and research, to support a finding of general causation.

Next PLIVA argues that Dr. Ross did not perform a proper differential diagnosis because he did not properly "rule out" other potential causes for Stoddard's alleged movement disorder. Specifically, PLIVA asserts that Dr. Ross failed to rule out Stoddard's hypoglycemia, the possibility of Wilson's disease or Huntington's disease or Stoddard's use of other drugs, such as promethazine, as possible causes of Stoddard's movement disorder.

> Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated. A reliable differential diagnosis typically, though not invariably, is performed after physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests, and generally is accomplished by determining the possible causes for the

9

> patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely. . . .
>
> . . . .
>
> . . . A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation. However, [a] medical expert's causation conclusion should not be excluded because he or she has failed to rule out every possible alternative cause of a plaintiff's illness. The alternative causes suggested by a defendant affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony, unless the expert can offer *no* explanation for why she has concluded [an alternative cause offered by the opposing party] was not the sole cause.

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262-65 (4th Cir. 1999) (alterations in original) (internal quotation marks and citations omitted) (quoting *Heller v. Shaw Indus.*, 167 F.3d 146, 156-57 (3d Cir. 1999)).

Dr. Ross' expert report in this case indicates that he considered Stoddard's other medical conditions and took into account other possible causes of Stoddard's movement disorder. The fact that he may not have ruled out *every* possible cause does not mean that he failed to perform a proper differential diagnosis. Nor does the fact that he examined Stoddard on only one occasion render his diagnosis "so lacking that it cannot provide a reliable basis for an opinion on causation." *Westberry*, 178 F.3d at 265. The Federal Rules of Evidence permit an expert to base his opinion on facts or data of a type reasonably relied upon by experts in the particular field. Fed. R. Evid. 703. In this case, Dr. Ross bases his opinions not simply on his single examination of Stoddard, but also upon his review of Stoddard's medical records, including another physician's diagnosis of tardive dyskinesia, and his extensive clinical experience in the treatment of patients with similar disorders. Any criticisms of Dr. Ross' methodology or diagnosis may be

appropriately addressed through cross-examination and do not affect the admissibility of Dr. Ross' testimony.

PLIVA takes a final shot at Dr. Ross' testimony, arguing it is irrelevant because Dr. Ross cannot state with a reasonable degree of medical certainty that "*PLIVA's* metoclopramide caused Mr. Stoddard's alleged injuries . . . [when] Mr. Stoddard showed no signs or symptoms of tardive dyskinesia or dystonia until late 2003 – nearly one year after he last took *PLIVA's* metoclopramide product and after a six-month break from taking *any* metoclopramide." (Mem. Supp. Mot. Exclude Dr. Ross [DE #158] at 14 (emphases added).) The court finds there is a sufficient factual basis to support Dr. Ross' opinion and that his opinion provides a sufficient causal link to be admissible at the trial of this action. Accordingly, the court rejects PLIVA's argument that Dr. Ross' testimony is irrelevant to the issues in the case.

## CONCLUSION

For the foregoing reasons and as set forth in detail above, Defendant's motion to exclude the testimony of Plaintiffs' expert, Robert C. Nelson, Ph.D. [DE #155] is GRANTED IN PART and DENIED IN PART; and Defendant's motion to exclude the testimony of Plaintiffs' expert, David Ross, M.D. [DE #157] is DENIED.

This 27th day of November 2013.

_____
KIMBERLY A. SWANK
United States Magistrate Judge